UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Bomasada Investment Group II, LLC, | Civil Action No. 2:18-cv-01784-BHH |
| Plaintiff, | |
| vs. | |
| | **OPINION AND ORDER** |
| Nationwide Insurance Co., | |
| Defendant. | |

This matter is before the Court on Plaintiff Bomasada Investment Group II, LLC's ("Plaintiff" or "BIG II") motion for partial summary judgment (ECF No. 34) and Defendant Nationwide Insurance Co.'s ("Defendant" or "Nationwide") motion for summary judgment (ECF No. 66).[1] For the reasons set forth in this Order, Plaintiff's motion for partial summary judgment is denied and Defendant's motion for summary judgment is granted.

## **BACKGROUND**

BIG II filed this declaratory judgment action seeking to recover a portion of the costs of defense incurred when it was sued in a construction litigation case. In 2014, BIG II was sued as the developer of a construction project known as the Bee Street Lofts ("the Project"). BIG II was the owner of the Project and engaged Hightower Construction Company, Inc. ("Hightower") as general contractor. BIG II and Hightower entered into a prime agreement which provided, in relevant part:

---

[1] The original parties to this action have filed various stipulations of dismissal such that the only remaining parties are BIG II as Plaintiff and Nationwide as Defendant. (*See* ECF Nos. 22, 46, 47, 49, 51, 76, 78.) The Court has adjusted the case caption accordingly and will only address the portions of the parties' summary judgment briefing relevant to resolving the outstanding dispute between BIG II and Nationwide.

§3.18 INDEMNIFICATION

§3.18.1 To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, the Owner's general and limited partners, the Owner's partners, officers, directors, and shareholders, the Architect or Owner's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Work, to the extent caused by the negligent acts or omissions or breaches of contract of the Contractor, a Subcontractor, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 3.18. This indemnification shall survive acceptance of the Work and completion or termination, with or without cause, of the Contract.

(ECF No. 34-1 & 34-2.) The Prime Agreement also required Hightower to secure liability insurance as follows:

§ 11.1 CONTRACTOR'S LIABILITY INSURANCE

§ 11.1.1 The Contractor shall purchase from and maintain in a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located and acceptable to Owner, such insurance in the amounts indicated in the Agreement as will protect the Contractor and Owner from claims set forth below which may arise out of or result from Contractor's operations under the Contact and for which the Contractor may be legally liable, whether such operations be by the Contractor or by a Subcontractor or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable:
. . .

5. claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom;
. . .

7. claims for . . . property damage arising out of completed operations to the full extent available under South Carolina Law; and 8. claims involving contractual liability insurance applicable to the Contractor's obligations under Section 3 .18.
. . .

§ 11.1.2.1 The liability insurance required by this Article 11 shall include all

major divisions of coverage and be on a comprehensive basis including: (1) Premises Operations (including XC/U as applicable); (2) Contractor's Protective; (3) Products and Completed Operations (to be maintained for five (5) years after Final Payment); (4) Personal Injury Liability with Employment Exclusion deleted or a separate Employment Practices Liability Policy; (5) Non-owned and hired motor vehicles automobile liability; (6) removal of the Care, Custody and Control exclusion; and (7) Umbrella Excess Liability. If Contractor cannot procure underground liability (XC/U) coverage, such coverage shall be procured and maintained by each Subcontractor responsible for structural support, structural rehabilitation and/or concrete work, and such coverage shall be in the limits required below, shall protect the interests of the Owner and the Owner's lenders in the Project and shall remain in effect for five (5) years after Substantial Completion of the Project. All insurance required by this Contract (whether procured by the Contractor or its Subcontractors), except Worker's Compensation, shall name the Owner as additional insured.

\*\*\*

The insurance to be obtained by Contractor under this Section 11.1 shall be underwritten by a reputable insurance company acceptable to Owner. authorized to do business in the State of the Project, shall name Owner and any mortgagee identified by Owner as an additional insured and shall contain an endorsement waiving any right of subrogation against Owner, any mortgagee and their employees.

(*Id.*)

Hightower entered into contracts with various subcontractors, including Jones Glass, Inc. ("Jones Glass"). The subcontract with Jones Glass provided, in relevant part:

1 SUBCONTRACT WORK To the extent terms of the agreement between Owner [BIG II] and Contractor [Hightower] (prime agreement) apply to the work of Subcontractor [Jones Glass], Contractor assumes toward Subcontractor all obligations, rights duties, and redress that Owner assumes toward Contractor. In an identical way, Subcontractor assumes toward Contractor all obligations, rights, duties, and redress that Contractor assumes toward Owner and others under the prime agreement. In the event of conflicts or inconsistencies between provisions of this Agreement and the prime agreement, this Agreement shall govern.
…

3 INSURANCE Subcontractor shall purchase and maintain insurance that will protect Subcontractor from claims arising out of Subcontractor operations under this Agreement, whether the operations are by Subcontractor, or any of Subcontractor's consultants or subcontractors or

3

anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. Subcontractor shall maintain coverage and limits of liability as set forth in Exhibit E.

. . .

EXHIBIT "E": INSURANCE PROVISIONS

. . .

Provide an original certificate of insurance indicating:

…

**Additional Insured: Owner**
Bomasada Investment Group II, LLC
8980 Lakes at 610 Drive
Houston, Texas 7056 [sic]

(ECF No. 34-4.)

In 2014, Bee Street Lofts Homeowners Association and Mark Laboccetta, individually and on behalf of others similarly situated, sued BIG II, Hightower, and various subcontractors for construction defects in the Project ("the underlying action"). BIG II demanded that Hightower and the subcontractors provide a defense and indemnification for the lawsuit. The Hartford Insurance Company ("Hartford") and Chubb Insurance Company ("Chubb") paid legal fees and expenses associated with BIG II's defense. BIG II made payments to Parker Poe Adams & Bernstein LLP above and beyond the defense costs paid by Hartford and Chubb, which BIG II now seeks to recover in this lawsuit. Nationwide contends that these payments were excess voluntary payments for which BIG II is responsible because it chose to employ its preferred defense counsel. (*See* ECF No. 54 at 3–4.) BIG II asserts that it did not receive a full defense from Hartford and Chubb, which agreed to contribute to, but not assume, BIG II's defense costs. As a result, BIG II contends, BIG II was forced to retain counsel and incurred substantial expense in defending itself despite being insured by a number of relevant policies as an additional

4

insured. (*See* ECF No. 71 at 6–7.) BIG II claims actual damages in the amount $297,000 for the failure of various insurance companies to pay the costs of its defense.

The insurance policy at issue in this summary judgment ruling was issued by Harleysville Preferred Insurance Company ("Harleysville") to Jones Glass. Harleysville was later purchased by Nationwide and the policy is, hereinafter, identified as the Nationwide policy (ECF No. 66-1). BIG II contends it is entitled to partial summary judgment on the duty to defend and maintains that the only issue remaining after the duty to defend is resolved is the amount owed by each insurer for the costs of defense. (ECF No. 34 at 6.) Nationwide contends: (1) that BIG II has been paid in full for its defense costs by Hartford; (2) that the additional insured endorsement in the Nationwide policy provides that the coverage is excess; (3) the subcontract signed by Jones Glass, the "Nationwide Insured," was not with BIG II; (4) the subcontract signed by the Nationwide Insured did not require Nationwide to make BIG II an additional insured; (5) the subcontract required the Nationwide Insured to provide a certificate of insurance naming Hightower as a certificate holder and BIG II as an additional insured, which certificate of insurance was provided by Jones Glass and accepted by Hightower and BIG II, identifying National Trust Insurance Company ("National") and FCCI Insurance Company ("FCCI") as the applicable insurance carriers, and satisfying Jones Glass' contractual obligation without any reference to the insurance sold to Jones Glass by Nationwide six years after completion of Jones Glass' work on the project; (6) the Nationwide policy provides that additional insured status is provided to an entity "for whom you are performing operations only as specified under a written contract that requires such person or entity to be added as an additional insured on your policy," precluding coverage because Nationwide did not

5

insure Jones Glass at the time it was "performing operations" for Hightower. (ECF No. 66 at 1–2.) Nationwide asserts that, based on the undisputed facts, it is entitled to judgment as a matter of law on all claims asserted by BIG II in this action, and requests that the Court dismiss all claims against it with prejudice. (*Id.* at 2.)

BIG II filed its motion for partial summary judgment on November 21, 2018. (ECF No. 34.) Nationwide responded on February 15, 2019 (ECF No. 54) and BIG II replied on March 4, 2019 (ECF No. 62). Nationwide filed its motion for summary judgment on March 18, 2019 and a memorandum in support on March 20, 2019. (ECF Nos. 66 & 67.) BIG II responded on April 19, 2019 (ECF No. 71) and Nationwide replied on May 6, 2019 (ECF No. 75). These matters are ripe for disposition and the Court now issues the following ruling.

## **LEGAL STANDARD**

**Summary Judgment**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . .

that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Where, as here, the Court is presented with the question of whether an insurance policy provides coverage, summary judgment is the proper mechanism by which to determine whether coverage is available. *See OneBeacon Ins. Co. v. Metro Ready-Mix, Inc.*, 242 F. App'x 936, 939 (4th Cir. 2007) ("Because the facts are undisputed and we are presented with a purely legal question of insurance coverage, the case is ripe for summary judgment.").

**South Carolina Insurance Law**

"[U]nder South Carolina law, '[q]uestions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the [underlying] complaint.'" *Auto Owners Ins. Co. v. Pers. Touch Med Spa*, LLC, 763 F. Supp. 2d 769, 776 (D.S.C. 2011) (quoting *City of Hartsville v. S.C. Mun. Ins.*

7

*& Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009)). In South Carolina, the duty to defend is broader than the duty to indemnify. *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 457 (D.S.C. 2011). "If the underlying complaint creates a *possibility* of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville*, 677 S.E.2d at 578 (citing *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co*, 265 S.E.2d 38 (S.C. 1980)) (emphasis added).

This District has previously explained, "[T]he duty to defend is triggered where the underlying complaint includes *any allegation* that raises the possibility of coverage." *Auto-Owners Ins. Co. v. Newsome*, No. 4:12-CV-00447-RBH, 2013 WL 3148334, at *4 (D.S.C. June 19, 2013) (emphasis added). Critically, an insurer whose duty to defend has been triggered by a lawsuit against the insured "is not justified in refusing to defend the entire case." *Town of Duncan v. State Budget & Control Bd.*, 482 S.E.2d 768, 773-74 (S.C. 1997); *see also Employers Mut. Liab. Ins. Co. v. Hendrix*, 199 F.2d 53, 59 (4th Cir. 1952) (stating with regard to a South Carolina insurance action, "[a]n insurer is not excused from defending suits against the policy holder by the joinder in the same suits of causes of action covered by the policy with the other causes of action beyond its scope"); *Cincinnati Ins. Co. v. Crossmann Cmtys. of N.C., Inc.*, No. 4:09-CV-1379-RBH, 2013 WL 1282017, at *11 (D.S.C. Mar. 27, 2013) ("South Carolina law requires that a triggered insurer with a duty to defend the policyholder in a suit must defend the policyholder against all claims in that suit, even those claims that are not covered under the policy."). "In short, if there is even one aspect of the claim which must be defended, the insurer must defend the entire suit." *Berenyi, Inc. v. Landmark Am. Ins. Co.*, No. C.A. 2:09-CV01556PMD, 2010 WL 233861, at *4 (D.S.C. Jan. 14, 2010) (citing *Isle of Palms Pest Control Co. v.*

*Monticello Ins. Co.*, 459 S.E.2d 318, 319 (S.C. Ct. App. 1994)). The possibility of coverage triggering an insurer's duty to defend may also be determined by facts outside of the complaint that are known by the insurer. *City of Hartsville*, 677 S.E.2d at 578 (citing *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 798 (S.C. 2008)). "[C]lauses of inclusion should be broadly construed in favor of coverage, and when there are doubts about the existence or extent of coverage, the language of the policy is to be 'understood in its most inclusive sense.'" *Cook v. State Farm Auto. Ins. Co.*, 656 S.E.2d 784, 786 (S.C. Ct. App. 2008) (quoting *Buddin v. Nationwide Mut. Ins. Co.*, 157 S.E.2d 633, 635 (1967)). "Courts should not, however, 'torture the meaning of policy language in order to extend' or defeat coverage that was 'never intended by the parties.'" *Cook*, 656 S.E.2d at 786-87 (quoting *Torrington Co. v. Aetna Cas. & Sur. Co.*, 216 S.E.2d 547, 550 (S.C. 1975)).

## **DISCUSSION**

The Court finds that the complaint in the underlying action did not create a possibility of coverage under the Nationwide policy, and Nationwide is, therefore, entitled to summary judgment. *See City of Hartsville*, 677 S.E.2d at 578. Certainly, the allegations of construction defects in the underlying action triggered the possibility of coverage, and thereby the duty to defend, on the part of some insurance carrier(s). *See Newsome*, 2013 WL 3148334, at *4. The question of which insurance carriers' duties were implicated, and for what proportional share of the cost burden, was significantly complicated by the multi-layered nature of the construction contracts and insurance relationships at issue. However, the Court need not descend into the particulars of the prime agreement, the Jones Glass subcontract, and Jones Glass' various insurance policies to find that there *was no opportunity* for the Nationwide policy to be triggered under the undisputed facts.

Assuming without deciding that Jones Glass' subcontract with Hightower imposed, by incorporation, a requirement upon Jones Glass to include BIG II as an additional insured—a point which Nationwide contests in the first instance—the additional insured endorsements in the Nationwide policy do not reach back in the manner that BIG II would suggest. The Nationwide policy includes two additional insured endorsements, one for ongoing operations and another for completed operations. (ECF No. 66-1 at 54–56.) Those provisions both state, in relevant part:

> **Section II – Who Is An Insured** is amended to include as an insured any person or organization for whom *you are performing operations* only as specified under a written contract (for purposes of this endorsement referred to as the "written contract") that requires that such person or organization be added as an additional insured on your policy.

(*Id.* at 54, 56 (emphasis added).) It is undisputed that National and FCCI were the insurers for Jones Glass at the time of the subcontract and work performed on the Project. (*See* Certificate of Liability Insurance, ECF No. 66-3.) It is further undisputed that Jones Glass' work on the Project was complete no later than 2007. (*See* ECF No. 54 at 4.) The Nationwide policy provided insurance to Jones Glass for the period of January 1, 2013 to January 1, 2014. (*See* ECF No. 66-1 at 2.) Accordingly, there was no point at which Jones Glass was both: (1) insured by Nationwide, and (2) could have been accurately described in the following manner – "you [Jones Glass] *are* performing operations" (whether on behalf of Hightower or on behalf of BIG II). Nothing about the additional insured completed operations provision purports to reach back in time and put Nationwide on the risk for activities Jones Glass undertook more than five years earlier, before it was a Nationwide Insured. (*See id.* at 56.) Therefore, Nationwide is entitled to summary judgment.

The Court declines to discuss the parties' remaining arguments for and against

summary judgment because they are moot in light of the Court's finding that it is a factual impossibility for the underlying action to have triggered coverage under the Nationwide policy.

**CONCLUSION**

After careful consideration of the parties' briefs, the associated record, and the applicable law, the Court hereby DENIES Plaintiff's motion for partial summary judgment (ECF No. 34) and GRANTS Defendant's motion for summary judgment (ECF No. 66). BIG II's claims against Nationwide are DISMISSED *with prejudice*.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

September 30, 2019
Charleston, South Carolina